FILED

Jan 18 2017, 8:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeremiah Edward Ericksen, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | January 18, 2017 <br><br> Court of Appeals Case No. 82A05-1605-CR-1153 <br><br> Appeal from the Vanderburgh Circuit Court <br><br> The Honorable Kelli E. Fink, Judge <br><br> Trial Court Cause No. 82C01-1511-F5-7086 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Jeremiah Edward Ericksen (Ericksen), appeals his conviction for carrying a handgun without a license, a Class A misdemeanor, Ind. Code § 35-47-2-1(e), enhanced to a Level 5 felony based on a prior conviction; and resisting law enforcement, a Level 6 felony, I.C. § 35-44.1-3-1.

We affirm.

## ISSUES

Ericksen raises two issues on appeal, which we restate as:

(1) Whether the State presented sufficient evidence beyond a reasonable doubt to support Ericksen's conviction for carrying a handgun without a license; and

(2) Whether the trial court tendered a proper jury instruction on the charge of carrying a handgun without a license.

## FACTS AND PROCEDURAL HISTORY

In September 2015, Detective James Budde (Detective Budde) of the Vanderburgh County Sheriff's Department initiated an undercover operation to purchase a handgun from Ericksen. During a meeting on October 8, 2015, Ericksen showed Detective Budde a black and silver Taurus .45 caliber

handgun and referred to it as a "throwaway."[1] (Transcript p. 169). The following month, on November 8, 2015, Detective Budde discussed with Ericksen the purchase of the Taurus handgun and Ericksen indicated that if this sale went smoothly, they could conduct future firearms transactions. They scheduled the purchase for November 11, 2015.

[5] On November 11, 2015, officers conducting surveillance on Ericksen witnessed him putting a black bag, a "possible gun case type thing," inside the trunk of a black Jaguar, which was registered to Marilyn Ericksen (Marilyn). (Tr. p. 150). Ericksen got into the back seat of the vehicle, directly behind the driver. Shortly after the vehicle crossed into Vanderburgh County, Indiana, on the Lloyd Expressway, officers conducted a traffic stop. During the stop, the officers held the occupants of the vehicle at gunpoint because of the high risk that Ericksen might be armed and ordered the occupants to exit the Jaguar. The front passenger, believed to be Ericksen's son, exited and was placed in handcuffs and seated in the police car. While the female driver, later identified as Marilyn, was complying with the officers' orders, Ericksen opened his car door and started cursing the officers. He jumped out of the car, smashed a full can of Coke on the ground, and yelled "to shoot him and kill him." (Tr. p. 93). He started "pumping up, throwing his hands, [and] clinching his fists." (Tr. p. 44). When Ericksen charged the officers, Officer Robert Schmitt (Officer Schmitt)

---

[1] A "throwaway" is a term typically "used by a criminal with a firearm that has no direct ties to that person, so if it's used in the commission of a crime, it cannot be traced back to them." (Transcript p. 169).

deployed his K-9 partner, Boss. Boss bit Ericksen in his stomach and forced him to the ground. While officers approached to place Ericksen in custody, Officer Schmitt ordered Boss to release Ericksen. Although Ericksen initially put his hands out, he continued to resist after Boss withdrew.

[6] Subsequent to Ericksen's arrest, the officers obtained a search warrant for the Jaguar. During the search of the vehicle, officers discovered two empty firearm magazines and one loose round in the black bag in the trunk. Inside the vehicle, the officers discovered a Taurus handgun underneath the driver's seat with the barrel of the handgun pointing towards the rear of the vehicle.

[7] On November 16, 2015, the State filed its Information, charging Ericksen with carrying a handgun without a license, a Class A misdemeanor; theft of a firearm, a Level 6 felony; and resisting law enforcement, a Level 6 felony. The State additionally filed an enhancement of the carrying a handgun without a license charge to a Level 5 felony based on a prior conviction. On April 13 and 14, 2016, the trial court conducted a jury trial. At the onset of the bifurcated trial, the State moved to dismiss the theft charge, which was granted by the trial court. After the evidence was presented, the jury returned a guilty verdict on the remaining two Counts. Ericksen pled guilty to the enhancement later that same day.

[8] On May 10, 2016, the trial court sentenced Ericksen to four years for carrying a firearm without a license, as enhanced to a Level 5 felony, and to one year for

the offense of resisting law enforcement. The trial court ordered the terms to be served concurrently.

[9] Ericksen now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

[10] Ericksen contends that the State failed to present sufficient evidence beyond a reasonable doubt to support his conviction for carrying a firearm without a license.[2] When reviewing a claim of insufficient evidence, the appellate court will neither reweigh the evidence nor judge the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict. *Id.* And we must affirm "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.*

[11] To convict Ericksen of carrying a handgun without a license as a Level 5 felony, the State was required to establish beyond a reasonable doubt that Ericksen did knowingly or intentionally carry a handgun in or upon his vehicle or person without a license in his possession after he had already been previously convicted for carrying a handgun without a license. *See* I.C. § 35-47-

---

[2] Ericksen does not contest his conviction for resisting law enforcement.

2-1. Focusing on the "carry" element of the offense, Ericksen argues that "there is no evidence that [Ericksen] 'carried' the handgun." (Appellant's Br. p. 13). In essence, Ericksen claims that because the statute requires a person to be carrying, rather than possessing a handgun, constructive possession is not an appropriate analysis to find a defendant guilty of carrying a handgun without a license.

[12] In support of his argument, Ericksen points to *Walker v. State*, 631 N.E.2d 1, 2 (Ind. Ct. App. 1994), where we rejected the State's argument that constructive possession of a handgun is sufficient to sustain a conviction for carrying a handgun without a license because the statute "speaks in terms of carrying a handgun" and "does not speak in terms of possessing a handgun." However, in *Henderson v. State*, 715 N.E.2d 833 (Ind. 1999), our supreme court concluded otherwise. Focusing on Indiana's handgun statute, the court explained:

> The relative breadth of [the statute's] language led us long ago to the conclusion that it encompasses more than moving about with a firearm attached to one's body. . . . The liberality of the Indiana text has nevertheless obliged us to examine the sort of evidence adequate to demonstrate that a defendant "carried" the weapon. We have approached this task, and the similar question of "possessing" drugs, by characterizing the possession of contraband as either actual or constructive. Actual possession occurs when a person had direct physical control over the item. Constructive possession occurs when somebody had "the intent and capability to maintain dominion and control over the item."

*Id*. at 835 (internal references omitted). *See also Woods v. State*, 471 N.E.2d 691 (Ind. 1984) (handgun hidden under dashboard was "carried").

[13] Here, Ericksen had no "direct physical control over the [handgun];" accordingly, at trial, the State proceeded on a theory of constructive possession. *See Bradshaw v. State*, 818 N.E.2d 59, 62 (Ind. Ct. App. 2004). When constructive possession is asserted, the State must demonstrate the defendant's knowledge of the contraband. This knowledge may be inferred from either the exclusive dominion and control over the premise containing the contraband, or, where as here, the control is non-exclusive, with evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband. *Woods*, 471 N.E.2d at 694. Proof of dominion and control of contraband has been found through a variety of means: (1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant. *Henderson*, 715 N.E.2d at 836.

[14] The record reflects that Detective Budde had arranged to purchase a Taurus handgun from Ericksen on the evening of the traffic stop. The handgun recovered from the vehicle was "the same handgun that was shown to [him] by [Ericksen] on October 8, [2015]" when Detective Budde met with Ericksen during the undercover operation. (Tr. p. 167). Before stopping the vehicle, an officer had observed that Ericksen placed a black bag in the trunk, that later was discovered to contain empty firearm magazines. During the stop and prior to Ericksen exiting the vehicle, Ericksen was seated in the backseat and appeared

"agitated, you could see his head bobbing back and forth[.]" (Tr. pp. 92-93). After Ericksen was arrested and a search warrant had been obtained, the officers located the Taurus handgun under the driver's seat, immediately in front of where Ericksen had been sitting. The handgun was discovered in a holster with the barrel pointing towards the rear of the vehicle.

[15]   Accordingly, the evidence indicates that the handgun was found within easy reach of where Ericksen had been sitting, he had displayed the handgun during his meeting with Detective Budde, he made furtive movements during the traffic stop and charged the officers resulting in resisting arrest charges. Based on the totality of the circumstances, we conclude that sufficient evidence exists establishing that Ericksen constructively possessed the handgun while seated in the vehicle.

## II. *Jury Instruction*

[16]   Next, Ericksen contends that the trial court's final jury instruction erroneously broadened the factual allegations sustaining his charge of carrying a handgun without a license. Because instructing the jury is a matter within the sound discretion of the trial court, we will reverse a trial court's decision to tender or reject a jury instruction only if there is an abuse of that discretion. *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016). We determine whether the instruction states the law correctly, whether it is supported by record evidence, and whether its substance is covered by other instructions. *Id.* Jury instructions are to be considered as a whole and in reference to each other; error in a particular

instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case. *Id.*

[17] Ericksen's charging information for carrying a handgun without a license read as follows:

> [O]n or about November 11, 2015, [Ericksen] did knowlingly or intentionally carry a handgun in or upon *the defendant's vehicle* or in person without a license in the defendant's possession.

(Appellant's App. Vol II, p. 11) (emphasis added). Ericksen now asserts that the trial court expanded these factual circumstances when it instructed the jury by tendering:

> In Count I, the statute defining the offense of [c]arrying a [h]andgun without a [l]icense, a Class A misdemeanor, which was in force at the time of the offense charged, reads in part as follows: A person who carries a handgun in *any vehicle* or on or about a person's body, except in his dwelling, on his property, or fixed place of business, without a license being in possession, commits [c]arrying a [h]andgun without a [l]icense, a Class A misdemeanor.
>
> Before you may convict the Defendant in Count I, the State must have proved each of the following beyond a reasonable doubt:
>
>   1. The Defendant [Ericksen],
>
>   2. Carried a handgun in *a vehicle* or on or about his person
>
>   3. Away from Defendant's dwelling, property, or fixed place of business.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of [c]arrying a [h]andgun without a [l]icense, a Class A misdemeanor, as charged in Count 1.

(Tr. Vol. V, Final Instruction No. 2) (emphasis added).

[18] Essentially, Ericksen now alleges that "under the charging information [he] could not be convicted for carrying a handgun in someone else's vehicle, however, Final Jury Instruction No. 2 allows just such a conviction." (Appellant's Br. p. 22). He claims that this change left him unprepared to defend on the allegation because he prepared his defense based on the State's inability to show he owned the Jaguar. As such, the instruction improperly expanded the charge and Ericksen's "liability exposure." (Appellant's Br. p. 22).

[19] Ericksen relies on *Kelly v. State*, 535 N.E.2d 140 (Ind. 1989), to support his argument. In *Kelly*, the defendant was charged by information with non-consensual criminal confinement, but the trial court instructed the jury on the statutory definition of criminal confinement, which includes both non-consensual criminal confinement and criminal confinement by removal. *Id*. at 141. The jury convicted the defendant on a general verdict. *Id*. at 142. Our supreme court reversed, holding that the jury instruction constituted prejudicial error because it was impossible to tell on which charge the jury had convicted the defendant. *Id*. at 143. We find *Kelly* to be inapposite to the case at hand as

the statute under which Ericksen was charged does not provide alternate factual bases for conviction such as the criminal confinement statute at issue in *Kelly*.

[20] Here, the jury instruction followed the handgun statute *verbatim* and referred to the mandate that "a person shall not carry a handgun in *any* vehicle[.]"  I.C. § 35-47-2-1 (emphasis added).  The language of the charging information was simply indicative of the fact that there was only one vehicle involved.  Moreover, the recitation of the statutory elements in the instruction did not serve as a basis to mislead the jury under the facts and circumstances of this case, nor does Ericksen explain how he was misled to his detriment by the charging information.  As noted by the trial court:

> I did take a look at this and it does, the charging document does say that it alleged that the handgun was in or upon the defendant's vehicle . . . I think that while they did not have to allege that they did, however, it seems to me if there were two vehicles involved in this case and I was allowing the State to present evidence as to a vehicle that was not factually known to the parties or a vehicle other than that charged in the charging document I think that would be a problem, but in this case there's clearly, as far as I could tell, only one vehicle involved, it just has been delineated in the charging document as the defendant's vehicle and I think if I make that change to the elements all I'm really doing is making the State prove an additional element that the vehicle belongs to the defendant and I don't think that that is, that is not an element of carrying a handgun without a license, so for that reason I'm going to overrule that objection to [c]ourt's instruction number 2.

(Tr. pp. 224-25).  A finding of prejudicial error requires more than an overly broad jury instruction.  *Potter v. State*, 684 N.E.2d 1127, 1132 (Ind. 1997).

Accordingly, we conclude that the trial court properly instructed the jury on the elements of the charge of carrying a handgun without a license.

## CONCLUSION

Based on the foregoing, we hold that the State presented sufficient evidence beyond a reasonable doubt to support Ericksen's conviction for carrying a handgun without a license; and the trial court tendered a proper jury instruction on the charge of carrying a handgun without a license

Affirmed.

Crone, J. and Altice, J. concur